UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                          CASE NO. 6:25-cr-12-PGB-RMN

CHARLES WILLIAM MAITSKI

### UNITED STATES' SENTENCING MEMORANDUM

For over a decade, the defendant, Charles William Maitski, deceived, groomed, and exploited children to satisfy his sexual desires. His crimes have left his young victims with scars and trauma they will carry for the rest of their lives. The United States seeks a guidelines sentence of life in prison to reflect the severity of the offenses, deter similar conduct, and to protect children.

I.     **BACKGROUND**

*Investigation*

In June of 2024, the St. Cloud Police Department received a CyberTip from the National Center for Missing and Exploited Children. The CyberTip reported a user of the Discord messaging platform, the defendant, who was involved in sending, receiving, and producing child pornography. Law enforcement worked quickly to obtain search warrants for the defendant's Discord, Instagram, email, and electronic devices.

Across the defendant's devices and accounts, the investigators found hundreds upon hundreds of videos and images of child pornography dating back to 2012. The

child pornography was shocking, including pre- and post-pubescent children and children being raped by adults. But more disturbing still, the investigators found that in just the one-year span shown by the search warrants the defendant had contacted more than 300 minors over the internet and exchanged more than 50,000 messages.

*Grooming*

The messages showed that the defendant had targeted child victims and methodically groomed them. He would pose as a young teenaged boy named "Chuck" from Orlando. He would send them child pornography of a young teenaged boy, pretending it was him, to assist his deception. Day after day, he would demand his victims send him pictures and videos of themselves and shower them with praise when they obeyed. His victims were routinely instructed to participate in one-sided video calls where the victims would perform for the defendant as he typed instructions.

As he set in his hooks, the defendant would learn about his victims and exploit their vulnerabilities. If a child had a strained relationship with a parent, he would inflame that tension and insert himself into the void. If a child suffered from self esteem or body image issues, the defendant would posture himself as a comforter and affirmer. Through his constant presence and grooming, the defendant made his child victims believe that they loved him and that he loved them. This achieved, his victims would do anything for him.

The longer a conversation would go, the more the defendant would extract from his victim. For example, the defendant groomed Minor Victim-2 for a year and

a half. What started with her producing child pornography on command led to increasingly degrading and humiliating videos. The defendant tried to make her perform sex acts on children she was babysitting. He asked her to send him nude photographs of her friend—even if it required slipping her a sleeping pill. He increasingly hinted about older men, attempted to sexualize her relationship with her father, sent her pornography of himself, and even tried to drop his persona and initiate a direct relationship with his victim.

The physical and emotional trauma the defendant has inflicted on his victims will last forever. Two of his victims will be present at sentencing to share with the Court how deeply the defendant's actions have affected them. A third victim and her mother have shared a letters, which are attached to the PSR.

## II. ANALYSIS OF THE 3553(a) FACTORS

Based on the duration and frequency of the defendant's offense, the age of his victims, and the abusive, degrading acts he commanded, the sentencing guidelines call for life in prison. PSR ¶ 107. The 18 U.S.C. § 3553(a) factors support a guidelines sentence.

### A. Nature and Circumstances of the Offenses

The nature and circumstances of the defendant's offenses represent a genuine callousness towards his victims and display his extreme sexual deviance. The duration of his activities, the staggering amount of child pornography he produced, and the extreme lengths he took to groom his victims places him in the highest tier of predators. For over a decade, he scoured the internet for victims and shattered the

innocence of countless children who were just getting their start in life. In grooming his victims, he barraged them with a corrupted and weaponized form of love and affection. When he was finished, his victims were left devastated. As Minor Victim-3 writes, "I feel like I am unworthy of anything and a failure. What have I been good for except to be used by others over and over again. . . . . What happened to me hasn't gone away. It will never go away." PSR at 48.

### B. History and Characteristics of the Defendant

The defendant's main mitigation argument comes from a forensic psychological report which is attached to the PSR. Relying on this report, the defendant argues that his previously undiagnosed depression led to the systematic grooming and sexual exploitation of children to satisfy "an emotional connection he was missing." Doc. 53 at 9–10. The psychological report fails to meaningfully address, mitigate, or explain the severity of the defendant's conduct.

The report highlights no history of trauma or childhood sexual abuse often seen in similar cases. Rather according to the report, more than a decade ago the defendant experienced the death of a childhood friend, lost his job, and became a stay-at-home dad. PSR at 33–34. These events—experienced by millions of other people—were so depressing that the defendant turned to online pornography to cope. PSR at 34. Because the defendant was depressed, this pornography usage eventually became a "behavioral addiction to online pornography." PSR at 44. Even taken at face value, the report does not explain how his "behavioral addiction to online pornography" turned into 12 years of grooming and preying on children.

In fact, the report does not address grooming at all. Nor could it; the examiner was never shown the tens of thousands of relevant messages which show the defendant systematically grooming his victims over the course of weeks, months, or more than a year. *See* PSR at 31 (list of materials examined as part of the assessment).[1] So while the defendant equates the "behavioral addiction" apparently caused by his depression with "engaging in . . . deceptive sexual conversations with minor victims," Doc. 53 at 9, the psychological report never makes this jump.

In other words, not only does the defendant's argument defy credulity and common sense, but it also goes well beyond the relatively conservative conclusions in the psychological report.

### C. Seriousness of the Crime, Promoting Respect for the Law, and the Need for Just Punishment

"[T]he greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." *United States v. Irey,* 612 F.3d 1160, 1206 (11th Cir. 2010). "Child sex crimes are among the most egregious and despicable of societal and criminal offenses . . . ." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (discussing the just application of lengthy sentences against child sexual predators).

---

[1] The psychological report identifies an HSI Report of Investigation (ROI). The master ROI details the investigative steps taken in this case, summarizes some of the child pornography discovered, and paraphrases or quotes excerpts of some messages to illustrate the nature of the evidence obtained from each search warrant. The master ROI contains sensitive victim information but can be produced under seal for the Court's review.

In recognition of the sheer destruction caused by the sexual exploitation of children, courts have applied, and the Eleventh Circuit routinely upholds, life sentences (or the statutory maximum) in similarly egregious cases. *See, e.g.*, *United States v. Kirby*, 938 F.3d 1254, 1256 (11th Cir. 2019) (upholding a 120-year statutory maximum sentence for defendant who produced 80 images of child pornography or child erotica); *United States v. Plummer*, No. 21-13648, 2022 WL 3697261, at *1 (11th Cir. Aug. 26, 2022) (upholding a 50-year statutory maximum sentence for defendant who sent threatening messages and child pornography to 15 identified victims, remotely produced child pornography through two victims, and possibly victimized other unidentified children); *United States v. Fuentes*, No. 24-11906, 2025 WL 2619272, at *1 (11th Cir. Sept. 11, 2025) (upholding a 110-year statutory maximum sentence for production and possession of child pornography, notwithstanding the defendant's mitigating background circumstances).

This case is no different. The defendant's victims are countless and the pain they will carry for the rest of their lives is real. The defendant is a serial predator and an absolute danger to society and children. Only a sentence of life in prison will reflect the seriousness of his crimes, promote respect for the law, and protect children.

### III.  CONCLUSION

The defendant's freedom and autonomy are wholly incompatible with the safety of children. A guidelines sentence of life imprisonment is required to reflect the seriousness of the defendant's crimes, provide just punishment for those crimes, protect the children in the community, and promote respect for the law.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:  /s/ Richard Varadan
Richard Varadan
Assistant United States Attorney
Florida Bar No.: 1025743
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:   (407) 648-7643
E-mail: Richard.Varadan@usdoj.gov

U.S. v. Charles William Maitski    Case No. 6:25-cr-12-PGB-RMN

**CERTIFICATE OF SERVICE**

 I hereby certify that on October 9, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

 Susan Malove, Esq.

           */s/ Richard Varadan*
           Richard Varadan
           Assistant United States Attorney
           Florida Bar No.: 1025743
           400 W. Washington Street, Suite 3100
           Orlando, Florida 32801
           Telephone: (407) 648-7500
           Facsimile: (407) 648-7643
           E-mail: Richard.Varadan@usdoj.gov